## DECLARATION OF KATHERINE CONWAY
## MANAGING ATTORNEY, DETAINED ADULTS PROGRAM
## FOR AMICA CENTER FOR IMMIGRANT RIGHTS

*I, Katherine Conway, make the following statements on behalf of Amica Center for Immigrant Rights. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Katherine Conway. I am a Managing Attorney for the Detained Adult Program at Amica Center for Immigrant Rights (Amica Center). More specifically, I am the Managing Attorney for our National Qualified Representative Program (NQRP) team at Amica Center. I have served in that role since April 2023, having previously worked as an NQRP Senior Attorney, staff attorney, fellow, and legal intern at Amica Center.

2. I incorporate my colleague Edith Hinson's Declaration in Support of Plaintiffs' Motion for a Preliminary Injunction (Dkt. 8-4) as if fully set forth herein.

3. The recent termination of the NQRP Nationwide Program has already negatively impacted our ability to serve current and prospective clients who qualify for our representation under NQRP.

4. On May 13, 2025, I attended a hearing for an individual of whom we were aware and who was referenced in the prior Amica Center Declaration as one of five other *pro se* individuals who have requested *Matter M-A-M-* hearings before the Annandale Immigration Court and thus may be deemed incompetent and therefore eligible for NQRP representation from Amica Center shortly. (Dkt. No 8-4, pp. 8-9). We had represented this person as their Qualified Representative previously, and his proceedings were dismissed in March 2025. Following dismissal, the Department of Homeland Security immediately filed a new Notice to Appear to restart removal proceedings, but because the NQRP was terminated, we will not receive a re-appointment for this client. If NQRP had not been terminated, we would have been reappointed to represent this person because we are the sole NQRP provider in the Fourth Circuit, where this person has been and remains detained.

5. I appeared only as a "Friend of the Court" (FOC) at this hearing and did not enter an appearance. My role as FOC was to help explain the complicated procedural history of the case, as the former client could not do that himself. At the hearing, the immigration judge found the individual incompetent to represent himself. She noted the NQRP termination and explained, "For that reason, the court cannot appoint you an attorney." She then said, "You and I are going to do our best to navigate this together." She scheduled another

preliminary hearing in the case for June 4, 2025, to allow the individual time to try and find an attorney.

6. After assessing our capacity and available resources, Amica Center intends to offer representation to this individual following my observations at the hearing. This was a very difficult choice to make in the wake of the termination of the Nationwide NQRP. This individual's disabilities and incompetency, as observed during prior representation and visible during the hearing, remain severe, as confirmed by the IJ's decision to designate him as incompetent a second time. While it is core to our mission to represent people whose competency prevents them from representing themselves or obtaining counsel, assigning a staff attorney to enter an appearance for this individual takes away capacity to serve other clients in other programs. All our attorneys carry heavy caseloads, but Amica Center still receives more referrals under our funded programs than we can adequately represent. With the termination of the Nationwide NQRP, the scope of representation we can offer this individual will be less than what it would have been under the program. QR representation under the program included BIA appeals, but now appeal representation will be subject to Amica Center funding and capacity constraints, meaning this individual might have to navigate the most difficult and legally technical portion of his case alone.

7. On the same day, May 13, 2025, one of our Immigrant Justice Corps (IJC) fellows, who is approximately halfway through a two-year externally funded fellowship, entered an appearance on behalf of another individual who an immigration judge had previously deemed incompetent before the termination of NQRP in April 2025. (This individual was included in the group of five *pro se* individuals of whom we were aware and that we referenced in Amica Center's prior declaration. Dkt. 8-4). Because of the termination, we did not receive the referral of this individual via NQRP/Acacia in April. However, because we were aware of their situation and are dedicated to serving such individuals, we arranged for our IJC fellow – the only staff member we have who has capacity to provide representation to an individual newly deemed incompetent, due to the fellow's external funding – to represent this individual. Obviously, this is an important stop-gap measure, but one that we cannot use indefinitely or for all people who would otherwise qualify for our services had the NQRP not been terminated. For one thing, our IJC fellow is with us for a limited amount of time and the NQRP cases she is working on could very well extend beyond the time of her fellowship, at which point it is unclear who would be able to continue representing these individuals. Also, one attorney cannot reasonably be expected to take on all of the cases of individuals deemed mentally incompetent in our region. We had been receiving referrals of approximately two cases per month and have a team of almost 10 full-time equivalent legal advocates to handle this caseload – this is far too much work for one attorney to take on.

8. Recent immigration court hearings have not only demonstrated the cruelty and confusion caused by the end of the NQRP, but also the ongoing need for QRs in competency cases. Recently, one of my colleagues secured asylum for a client we were appointed to represent after the client relocated to Virginia from a *Franco* jurisdiction. (Again, without the Nationwide Policy and Program in place, we would not have been appointed to represent this individual.) Medical evaluations revealed that the client, who is in her late twenties, has an intellectual disability and schizophrenia. She has the cognitive capacity of a child roughly six years of age. She cannot tell time, attend appointments or travel independently, or accurately state her needs. The client, with the QR's assistance, applied for asylum on the basis of past persecution she faced on account of her disability in her home country.

9. Because the client is unable to state her needs, struggles with memory, and fears authority figures (all on account of her disability), she is unable to clearly respond to questions about what harm she has endured and why she fears return to her home country. When asked why she does not want to return, she repeatedly stated, "Because I need my mom" (who is in the United States.). However, through months of slowly gathering details in a trauma-informed setting with her trusted QR, the client eventually opened up and was able to give a history of sexual and physical persecution in her home country. Those details were submitted by her QR in an affidavit to the court.

10. The IJ gave much weight to the client's written declaration. When the client was called to testify at her hearing, the IJ noted that because she had the capacity of a small child, he did not feel comfortable having her recount her past persecution and sexual abuse in detail. Rather, he would have the parties ask only enough questions to corroborate certain details of her past. Once she did that, the IJ found that she had sufficiently met her burden and did not need to hear more, relying on the details in the written affidavit. He granted asylum and the government waived appeal.

11. Had the client not had a QR, she would not have been able to prepare an affidavit for the court detailing her past persecution. Not only can she not identify important information, but she has the literacy of a third grader. At her hearing, she likely would have been incapable of answering questions regarding any past harm, simply saying that she wanted to stay in the United States with her mom. Consequently, her case likely would have been denied. Having a QR was vital to providing the information to the court that it needed to make the right decision. Without a QR, the court likely would not have known that this client was a refugee who fled very serious persecution and who warranted asylum.

12. In sum, there was almost no chance that this client would have been able to secure this life-saving relief without the assistance of her QR. And there is no way we would have been

    able to serve this client without the nationwide NQRP appointment mechanism and funding.

13. In the absence of the NQRP appointment mechanism, I am deeply concerned about individuals like this client whose disabilities and incompetence will prevent them from consenting to representation, in the rare scenario where representation can even be secured. For the client discussed above, and so many others Amica Center has served, the incompetency that led to her past persecution also prevented her from consenting to representation, let alone understanding that her fear of return and past harm qualified her as a refugee. Only via appointment could the QR-client relationship exist in her case, but once it existed, everyone benefited. Without the NQRP appointment mechanism, individuals whose disabilities and competency mean they cannot or will not consent to representation will have no means of representation in their immigration proceedings.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 22nd of May 2025, in Washington, D.C.

                                               */s/ Katherine Conway*

                                        Katherine Conway
                                        Managing Attorney, Detained Adult Program
                                        Amica Center for Immigrant Rights
                                        1025 Connecticut Ave NW Ste. 701
                                        Washington, DC 20036
                                        Tel: (202) 793-5287
                                        Fax: (202) 331-3341
                                        Katherine.conway@amicacenter.org