# Exhibit 3



```
                                                            OOD
                                                            PM 25-02
                                                Effective:  January 27, 2025
```

To:     All of EOIR
From:   Sirce E. Owen, Acting Director
Date:   January 27, 2025

**EOIR'S CORE POLICY VALUES**

| | |
|---|---|
| PURPOSE: | To recommit to EOIR's core values and the rule of law |
| OWNER: | Office of the Director |
| AUTHORITY: | 8 C.F.R. § 1003.0(b) |
| CANCELLATION: | None |

### I.   Introduction

EOIR formulates policy in multiple ways—*e.g.* through adjudications, through regulations, and through the issuance of policy memoranda—and many different employees influence what goes into those policies. This Policy Memorandum (PM) provides general guidance regarding the foundational values for such policies. It also addresses specific situations which have undermined or contradicted those values in recent years.

### II.  EOIR's Core Values and Commitment to the Rule of Law

EOIR's values at the core of its mission are rooted in three "I's": integrity, impartiality, and the decisional independence of its adjudicators. These values are essential to any adjudicatory system, and they have been fundamental to EOIR's identity since it was established within the Department of Justice (DOJ) in 1983. However, all three of these values have been severely eroded in recent years, leaving many employees despondent and disillusioned while questioning the purpose of EOIR and their role at the agency. More guidance on these values specifically will be forthcoming; but, in general, EOIR's primary policy-formulating principle going forward will be to restore these values as the pillars of all of its activities.

Additionally, although it is perhaps an unfortunate commentary on the state of EOIR to have to state this explicitly, EOIR policy is that all adjudicators are required to follow applicable law. EOIR's integrity, the impartiality of its adjudicators, and respect for the decisional independence of those adjudicators fundamentally depend on EOIR's commitment to adhere to applicable law in its adjudications. A willingness to ignore the law in order to reach a preferred policy outcome, to avoid having to make a hard decision or risking an appeal, or in a misguided belief that such behavior is "victimless" because one party does not care or will not challenge the decision are all repugnant to EOIR's core values and deeply damage the integrity of its proceedings. Even when

an adjudicator personally disagrees with the law, he or she must nevertheless apply the law as it is; to do otherwise mocks EOIR's values and those of all respected adjudicatory systems. Further, adjudicators who choose not to adhere to the law risk corrective or disciplinary action. *See*, *e.g.*, Section IV, Ethics and Professionalism Guide for Immigration Judges, EthicsandProfessionalismGuideforIJs.pdf ("*An Immigration Judge should be faithful to the law and maintain professional competence in it.* (emphasis added)).[1]

### III.     One EOIR

EOIR has seven constituent components: three adjudicatory components (the Board of Immigration Appeals (BIA), the Office of the Chief Administrative Hearing Officer (OCAHO), and the Office of the Chief Immigration Judge (OCIJ)) and four supporting components (the Office of Administration (OA), the Office of the General Counsel (OGC), the Office of Information Technology (OIT), and the Office of Policy (OP)), all under the leadership of the Office of the Director (OOD). Although EOIR has multiple components with vital roles and responsibilities, there is only one EOIR as a whole, and it has only one primary mission: "to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws." All employees in all components should be oriented toward fulfilling that mission. In doing so, they should also be mindful of their roles within the larger agency and should respect their fellow employees in other components.

For instance, neither the applicable regulations nor the position description of any component head's position authorizes that component to exercise authority over another component or to direct the operations of another component. Consequently, no one component can direct another component on an action to take or not to take. If there is a dispute between or among components, then the component heads should elevate the dispute for resolution to OOD.

Support components must generally treat other components equally. Of course, support components also must necessarily prioritize resources and availability on a day-to-day basis, and questions about competing priorities should be raised to OOD. Moreover, the components vary considerably in size; accordingly, they may necessarily be treated differently based on those differences in size, particularly in matters of budgetary and personnel allocations. However, requests to support components should not languish or go unanswered for months, or even years, at a time; it is simply unacceptable for a support component to ignore a request from an adjudicatory component for assistance for more than six months.[2] Should such action occur, the issue should be elevated to OOD immediately.

Finally, all EOIR employees should be treated fairly and professionally as a general matter, but it is imperative that similarly-situated employees should be treated similarly, particularly in matters of corrective action or discipline. Not doing so is, at best, unprofessional and, at worst, unlawful.

---

[1]   https://www.justice.gov/sites/default/files/eoir/legacy/2013/05/23/EthicsandProfessionalismGuideforIJs.pdf
[2] This does not necessarily mean that a support component is required to approve any request. However, the support component is required to provide timely updates on the status of the request and, if approved, a realistic timetable for its completion.

EOIR has faced multiple allegations of inequitable treatment of its employees over the past four years, including excessively favorable treatment for so-called "elites," wildly disparate treatment of components unrelated to each component's size or operations, and—perhaps most distressingly—widely varying disciplinary or corrective measures for similar alleged misconduct.[3] These practices, which are antithetical to EOIR's values and undermine its effectiveness as an agency, are to cease immediately.

### IV.     The EOIR Policy Manual

DOJ's Justice Manual (JM) "publicly sets forth internal DOJ policies and procedures." *See* JM 1-1.100. It is the primary repository for many unclassified DOJ policies. The JM began as the United States Attorneys' Manual in at least 1953, *see* https://www.justice.gov/archive/usao/usam/index.html, though it included policies related to nearly all DOJ components, including the former Immigration and Naturalization Service and the Board of Immigration Appeals, *see id*. at 18. Its current numbering and organizational format was established by at least 1976, see https://www.justice.gov/archive/usao/usam/index.html, and its overall format has become well-known to both the public and DOJ employees over the years. Even after a name change to the Justice Manual in 2018, the JM's format was well-established and easily accessible.

Accordingly, when EOIR published its first-ever comprehensive and unified Policy Manual in January 2021, it naturally followed the well-established format of the JM. For reasons that are not readily apparent, EOIR subsequently broke up the Policy Manual in 2022, jettisoned the well-established format of the JM, and reverted to a siloed format with each component's practice manual separated—though, confusingly, it retained shared appendices. This change accomplished little, aside from reinforcing the separateness of the individual adjudicatory components, contrary to the agency's shared mission and its "One EOIR" identity. It also created confusion and inefficiency, particularly in attempting to access relevant information through EOIR's public website. Accordingly, EOIR is reverting to its prior Policy Manual format, based on the longstanding JM format, in concert with the issuance of this PM.[4]

### V.     EOIR Policy Memoranda

Although EOIR PMs are issued in the names of individuals, they represent the policy of the agency as a whole.  Nevertheless, for reasons that are also not readily apparent, EOIR changed its labeling format for PMs in 2021 and began referring to them as "Director's Memoranda" instead, implying that they represented the views solely of the Director. Not only did this change in nomenclature create confusion as to what such memoranda genuinely represented, but it led to further confusion

---

[3] Whether these differences in disciplinary action constitute discrimination, prohibited personnel practices, or other unlawful actions is beyond the scope of this PM.

[4] According to OP, the last version of the Policy Manual in effect prior to breaking it up in August 2022 was not retained by EOIR leadership at the time and may have been lost permanently due to a technological update by DOJ. The failure to retain the Policy Manual clearly violated EOIR's records retention policies, but whether it violated any additional laws or policies is beyond the scope of this PM. Nevertheless, EOIR has reconstructed the Policy Manual as it was in effect as of January 2021 and will update it, as appropriate, once it is available online. To that point, the policies contained in the Policy Manual as of January 2021 are re-established as EOIR policies, subject to any relevant, subsequent updates to account for intervening changes in law.

when EOIR reverted back to the PM label in 2024 without explanation.[5] Many of the DMs issued were based on specious, potentially unlawful, or otherwise problematic reasoning; they also established incorrect or inappropriate policies that are at odds with current policies of the Executive Branch. As such, they are expected to be rescinded accordingly in conjunction with the establishment of new policies. For any that are retained, however, they will be re-labeled as PMs to ensure consistency.

### VI. Prohibition on Secret[6] Operational Policies Related to Case Adjudications[7]

The EOIR Policy Manual issued in 2021 prohibited any secret operational policies related to case adjudications. *See* PM 1.1 (2021) (noting that any such policies not in the PM were no longer in effect). However, EOIR subsequently moved away from that stance and eventually superseded that part of the Policy Manual altogether. As a result, it began issuing secret operational policies related to case adjudications—*e.g.* a general prohibition on the issuance of standing orders by immigration judges, *contra* PM 20-09, *The Immigration Court Practice Manual and Orders*—whose lack of transparency undermined confidence in the integrity of EOIR proceedings. As a result, any operational policy related to case adjudications issued in secret between February 1, 2021, and January 21, 2025, is no longer in effect. Following a review of all such policies, if any are reinstated, they will be placed in the EOIR Policy Manual.

### VII. Interpreting EOIR Policies

EOIR recognizes that no single policy can ever account for 100% of hypothetical scenarios; consequently, EOIR policies strive only to cover most realistic or plausible situations. Nevertheless, critics of individual policies often raise tendentious, speculative, or grossly unrealistic scenarios as a means to try and discredit or change policies they disagree with. However inappropriately advocacy organizations or those with biased interests choose to misread EOIR policies, EOIR employees should not follow their lead. EOIR employees should not read policies obtusely or ridiculously, and all policies should be read with a modicum of common sense.

For example, EOIR issued PM 21-14, *Rulemakings and Federal Court Orders*, to respond to absurd and unsupported arguments that it was attempting to violate a court order through rulemaking, even though no rational, objective attorney could read EOIR's action that way. Thus, because all EOIR policies are read to be congruent with applicable law, including statutes, regulations, binding case law, and any applicable court orders, and no policy should be construed

---

[5] For example, EOIR currently has both a DM 24-01 and a PM 24-01.

[6] "Secret" refers to any operational policies related to case adjudications that were not disseminated publicly on EOIR's website or on social media, including those that were conveyed only orally or through internal email. Because of their secretive nature, these policies, which generally changed prior, public policies, may have violated basic principles of administrative law. *See*, *e.g.*, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books."). Without knowing for certain at the present time which secret operational policies related to case adjudications remain to be discovered and which may have been required to be published by law, EOIR will determine on a case-by-case basis whether it can, in good faith, recommend defending any such policies if challenged in litigation.

[7] "Operational policies related to adjudications" refers only to policies related to the operations and procedures of EOIR's three adjudicatory components. It does not include any other types of policies, including policies unrelated to adjudications (*e.g.* office parking policies).

as being inconsistent with any such source of law, EOIR should not countenance any obtuse or tendentious arguments intended to undermine the application of its policies.

### VIII.  Conclusion

All EOIR employees are expected to comport themselves always in an ethical and professional manner, to follow the law, and to faithfully carry out the policies of DOJ and the Executive Branch. Although the past four years have severely undermined EOIR's core values, an effort to restore those values and to re-establish EOIR as a model administrative adjudicatory body is well underway. If all employees are willing to join that effort, then there will be no limit to what EOIR can achieve.

This PM is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person. Nothing herein should be construed as mandating a particular outcome in any specific case. Nothing in this PM limits an adjudicator's independent judgment and discretion in adjudicating cases or an adjudicator's authority under applicable law.

Please contact your supervisor if you have any questions.