IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN GATEWAYS, *et al.*,

*Plaintiffs,*

–v.–

DEPARTMENT OF JUSTICE, *et al.*,

*Defendants.*

**Case No. 1:25-cv-01370-AHA**

## PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS REPORT

Plaintiffs respectfully submit the following response to Defendants' status report.

*First*, Defendants' status report confirms that the National Qualified Representative Program (NQRP) was a policy, not a contract, and that Defendants terminated that policy. *See* ECF No. 27. The Acting Director for EOIR agrees that "the [EOIR] *Policy Manual* included information about the NQRP in Part V, Chapter 1.7." ECF No. 27-1 ¶ 7 (emphasis added). Before the termination, that Chapter provided:

> As part of enhanced procedural protections, EOIR's National Qualified Representative Program (NQRP) *is a program* that provides Qualified Representatives to certain unrepresented and detained respondents who are found by an immigration judge or the BIA to be incompetent to represent themselves in immigration proceedings. EOIR carries out the NQRP through the effort of federal staff and a contract. For further information, please visit EOIR's website.

ECF No. 27-3 (emphasis added). In addition, as the Acting Director explains, she issued "a Policy Memorandum reaffirming the importance of the Policy Manual and directing that it reflect EOIR's current policies and procedures" in January 2025. ECF No. 27-1 ¶ 10; *see also* ECF No. 27-4 at 4 n.4 ("[T]he policies contained in the Policy Manual as of January 2021 are re-established as EOIR policies, subject to any relevant, subsequent updates to account for intervening changes in law").

By including the NQRP in the EOIR Policy Manual, EOIR affirmed that it was one of EOIR's policies and procedures. These statements show that the agency itself understands that the NQRP was a program that reflected agency policy, and this understanding is consistent with Plaintiffs' explanation in their Motion for Preliminary Injunction or Stay and allegations in the Complaint. *See, e.g.*, ECF No. 1 ¶¶ 1–12, 75–82, 108; ECF No. 8-1 at 13–14.

Consistent with Plaintiffs' allegations and arguments, the latest version of the Policy Manual confirms that Defendants have terminated the NQRP in all but the *Franco* states. *See* ECF No. 27-7. The NQRP Chapter quoted above no longer exists. Instead, the Policy Manual now refers to providing "Qualified Representatives (QRs, e.g. attorneys)" in only the *Franco* states, while continuing to acknowledge that "[t]he appointment of a QR is intended as a safeguard to ensure due process and fundamental fairness for individuals found to be mentally incompetent to represent themselves." *Id.* That safeguard is not being provided to individuals detained outside of the *Franco* states. Moreover, the Acting Director confirmed in her declaration that she "emailed all EOIR personnel on April 29, 2025, informing them that the nationwide NQRP policy announced in the O'Leary Memo was no longer in effect." ECF No. 27-1 ¶ 13.

Though unclear, the same April 29 email also suggests that the NQRP's termination means that immigration judges will be limited in their ability to conduct competency hearings outside of the *Franco* states. ECF No. 27-6 at 2. Specifically, the email indicates that "the provision of Forensic Competency Evaluations" will continue for those individuals covered by *Franco*. *Id.* Thus, while immigration judges can make competency assessments consistent with *Matter of M-A-M-*, 25 I. & N. Dec. 474, 481 (BIA 2011), they seemingly cannot order independent evaluations to inform their assessment of competency outside of the *Franco* states. Similarly, it is unclear that a third-party notification regarding an individual's competency will continue to be considered

2

outside of the *Franco* states. In other words, even if Plaintiffs or a noncitizen's family member attempted to alert the immigration court to any competency concerns, it is unclear that such action would trigger ongoing obligations for judges outside of the *Franco* jurisdictions.

*Second*, the Acting Director's suggestion that the Nationwide Policy set forth in the O'Leary Memorandum and the Phase I Directive have not been in effect since 2021 does not pass muster. ECF No. 27-1 ¶ 4. Indeed, the Acting Director's April 29 email states that the Nationwide Policy was rescinded on April 25, 2025. ECF No. 27-6 at 2. There is no explanation as to how that policy was only just rescinded if it had not been in effect for the last four years.

In addition, EOIR specifically relied on that policy in a 2023 proposed rulemaking to explain why it needed to reverse a prior rule. *See Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure*, 88 Fed. Reg. 62242, 62268 (Sept. 8, 2023) ("[S]ince the issuance of that injunction [in *Franco*], EOIR has adopted similar procedures pursuant to its nationwide policy to provide enhanced procedural protections to unrepresented immigration detainees with serious mental disorders or conditions ('Nationwide Policy') for similarly situated individuals detained outside of the three states covered by the Franco-Gonzalez injunction. Thus, adherence to the AA96 Final Rule would be irreconcilable with adherence to court-ordered permanent injunctions in effect in three States and irreconcilable with EOIR's Nationwide Policy." (citing Press Release, EOIR, *Department of Justice and the Department of Homeland Security Announce Safeguards for Unrepresented Immigration Detainees with Serious Mental Disorders or Conditions* n.42 (Apr. 22, 2013)).[1] And none of Defendants' briefing in this case suggests that they understood these documents to have been rendered ineffective in 2021.

---

[1] EOIR also referenced the O'Leary Memorandum in a 2022 memorandum, well after the supposed date that it no longer had effect. *See EOIR Director's Memoranda*, *Office of the Chief Immigration*

3

The Acacia contract from 2024—issued by the Department of Justice—also discusses the Nationwide Policy in a manner that illustrates the policy's ongoing effect at that time. The contract states: "in 2013, EOIR's Office of the Chief Immigration Judge (OCIJ) announced a 'Nationwide Policy to Provide Enhanced Procedural Protections to Unrepresented Detained Noncitizens with Serious Mental Disorders or Conditions' ('Nationwide Policy'). *Under this Policy, EOIR is committed* to identifying detained, unrepresented individuals who may not be mentally competent to represent themselves in immigration proceedings, and who are not *Franco* class members. The purpose of the NQRP is to ensure EOIR's compliance with the above-referenced *Franco* Orders and to carry out EOIR's commitment under the Nationwide Policy." ECF No. 13-2 at 63 (emphasis added). Moreover, the agency's conduct demonstrates that the Nationwide Policy and Phase I Directive were still in effect, as immigration judges continued to follow the detailed procedures set out in the policies until the termination of the NQRP.

Plaintiffs request that Defendants provide further information regarding their ongoing practices. Specifically, are immigration judges continuing to conduct competency hearings consistent with the requirements set out in the Nationwide Policy and Phase I Directive? This includes, but is not limited to, clarifying which of sections III through X of the Phase I Directive are continuing to be applied. Where are the provisions and sections of those policies located in the current EOIR Policy Manual and, if rescinded or moved, where were they located before January 20, 2025? Have other portions of the EOIR Policy Manual related to competency hearings or other requirements set out in the Nationwide Policy and Phase I Directive also been rescinded? Are immigration judges accepting third-party notifications related to competency? What was the

---

*Judge*, https://www.justice.gov/eoir/page/file/1503696/dl?inline= at 4 n.5 (referencing the Nationwide Policy) (May 5, 2022).

4

"policy memorialized by both documents" that "was subsumed into EOIR's Policy Manual" (ECF No. 27-1 ¶ 4)? If the policies had no legal effect as of January 13, 2021, what is the basis for the Acting Director's statement that "[a]s of April 25, 2025," the "Nationwide Policy . . . as announced in the April 22, 2013, memorandum issued by Chief Immigration Judge Brian M. O'Leary, is no longer in effect" (ECF No. 27-6)?

*Finally,* Plaintiffs have also filed a Motion to Supplement the Record with two declarations based on information they have recently learned, including one from a former counsel to an NQRP client. ECF No. 28. That counsel, who is not part of the Plaintiff organizations, had to withdraw from a representation because of the termination of the NQRP. Now without counsel, his former client agreed to be deported after the immigration judge reversed her finding of incompetency (without receiving any new evidence that he was in fact competent). This is an example of the type of harm that will continue to accumulate as a result of Defendants' termination of the NQRP.

| | |
|---|---|
| Date: June 5, 2025 | Respectfully submitted, |

s/ Keren Zwick
Keren Zwick (D.D.C Bar No. IL0055)
Mark Feldman (C.A. Bar No. 302629)
(admitted *pro hac vice*)
Mary Georgevich (M.N. Bar No. 0399950)
(admitted *pro hac vice*)
Charles Roth (N.Y. Bar No. 2839041)
(admitted *pro hac vice*)
NATIONAL IMMIGRANT JUSTICE CENTER
111 W. Jackson Blvd., Suite 800
Chicago, IL 60604
Phone: 312.660.1364
Email: kzwick@immigrantjustice.org
mfeldman@immigrantjustice.org
mgeorgevich@immigrantjustice.org
croth@immigrantjustice.org

*Attorneys for Plaintiffs*
*\*Pro hac vice* pending

s/ *Ivano Ventresca*
Ivano Ventresca (D.C. Bar No. 1045769)
Monica F. Sharma (D.C. Bar No. 90013922)
ZUCKERMAN SPAEDER LLP
2100 L Street NW, Suite 400
Washington, DC 20037
Phone: 202.778.1842
Email: iventresca@zuckerman.com
msharma@zuckerman.com

s/ *Adina Appelbaum*
Adina Appelbaum (D.C. Bar No. 1026331)
F. Evan Benz (N.C. Bar. No 49077)*
AMICA CENTER FOR IMMIGRANT RIGHTS
1025 Connecticut Avenue NW, Suite 701
Washington, DC 20036
Phone: 202.331.3320
Email: adina@amicacenter.org
evan@amicacenter.org